J-A18032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN JOHN TROHA | : | |
| | : | |
| Appellant | : | No. 888 WDA 2020 |

Appeal from the Judgment of Sentence Entered July 24, 2020
In the Court of Common Pleas of Elk County Criminal Division at No(s):
CP-24-CR-0000416-2017

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED:  November 9, 2021**

Stephen John Troha ("Troha") appeals from the judgment of sentence imposed following his convictions of three counts each of involuntary deviate sexual intercourse with a child ("IDSI"), indecent assault, and indecent exposure; two counts of unlawful contact with a minor – sexual offense; and one count each of corruption of minors and endangering welfare of children.[1] After careful review, we affirm.

This case involves the sexual abuse of a minor female, born in August 2007 ("Victim" or "the Victim").  Troha and the Victim's mother ("Mother") had been close friends for several years.  N.T., 10/29/19, at 170-71.  On September 12, 2017, Mother and the 10-year-old Victim were at Troha's

---

[1] 18 Pa.C.S.A §§ 3123(b), 3126(a)(7), 3127(a), 6318(a)(1), 6301(a)(1)(ii), and 4304(a)(1).

home. *Id.* at 175. At some point, Mother went upstairs and found Troha at the top of the stairs, with his pants around his ankles, his penis erect, and the Victim standing near him, holding two dolls. *Id.* at 179. Following an altercation with Troha, Mother left the residence with Victim and called 911. *Id.* at 188. Police arrived shortly thereafter. *Id.* at 217.

Mother and Victim were taken to the police station to ascertain whether the Victim was in ongoing danger. *Id.* at 235. As part of the investigation, Victim was taken to the Children's Advocacy Center in McKean County for a forensic interview. *Id.* at 224. On September 29, 2017, Police arrested Troha and charged him with committing various sexual offenses against Victim over the course of several years. Following Troha's arrest, Victim gave another interview in November 2018, which we discuss in further detail, *infra*.[2]

On October 30, 2019, following a jury trial, Troha was convicted of the aforementioned crimes. The trial court sentenced Troha to an aggregate sentence of thirteen to twenty-six years in prison, followed by two years of probation. Troha filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Troha presents the following questions for our review:

---

[2] The record reflects that the 2018 interview occurred after Troha had waived his right to a preliminary hearing, in exchange for an on-the-record interview with Victim, the District Attorney, and Troha's counsel. N.T., 10/29/19, at 27-28. The interview was reduced to an unofficial transcript. *Id.* at 29.

1. Whether the [t]rial [c]ourt committed reversible error by prohibiting [Troha] from impeaching [the Victim] with her inconsistent pre-trial, recorded, interview statements made to the then-[D]istrict [A]ttorney and Troha's counsel[,] and from offering those statements as substantive … "IDSI" with a Child exculpatory evidence?

2. Whether the [t]rial [c]ourt erred by prohibiting [Troha] from calling a witness to testify that [Mother], the sole Commonwealth eyewitness, did not have a reputation in the community for being truthful?

Brief for Appellant at 8.

Troha first argues that the trial court erred by sustaining the Commonwealth's objection and prohibiting Troha from introducing the Victim's prior statements during her November 6, 2018, interview. *Id.* at 19.[3] Troha posits that Victim's trial testimony, *i.e.*, that the Victim had placed the tails into his rectum, was contradicted by Victim's statements during the 2018 interview, wherein she allegedly stated that Troha had inserted the tails into his rectum himself, and that she had never touched his butt. *Id.* at 20-22. Troha asserts that the recorded statement in the 2018 interview should have been admissible as substantive evidence and for purposes of impeachment

_____

[3] We note that there is neither a copy of the "unofficial transcript," nor the audio recording of the interview, in the certified record. Because neither a transcript nor audio recording of the interview is in the certified record, we were unable to confirm the date of the interview. In his brief, Troha asserts that it occurred on November 6, 2018. Brief for Appellant at 9. The date of the interview is not relevant to our disposition of the case.

pursuant to Pa.R.E. 803.1.[4]  *Id.* at 20.

According to Troha, the recording was an on-the-record audiotaped interview with the then-Elk County District Attorney; thus, the Victim's statement that Troha had inserted the tails into his own rectum should have been admitted.  *Id.* at 20-21.  Troha argues that the trial court erred by requiring that the Victim's statement "be tendered in response to a 'parallel question' as a prerequisite for [Troha] using it to impeach her and moving for its admission as substantive evidence."  *Id.* at 21.

Appellate review of the admission of evidence is well settled and governed by the following standard of review:

> In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference.  It is firmly established, "questions involving the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision of such a question absent clear abuse of discretion."

---

[4] Troha's argument conflates Pa.R.E. 803.1 (relating to the admissibility of a witness's prior inconsistent statement as an exception to the rule against hearsay) and Pa.R.E. 613 (relating to the admissibility of a witness's prior inconsistent statement to impeach witness credibility).  On the day of trial, before the jury had entered the court room, Troha argued that the interview was nonhearsay pursuant to Pa.R.E. 1003, which does not correspond to a Rule of Evidence.  N.T., 10/29/19, at 30-31.  In response, the Commonwealth argued that Troha previously had assured the Commonwealth that he would not seek to use the interview as substantive evidence, and that if he sought to use it as substantive evidence, the Commonwealth would have filed a motion in *limine* to seek its preclusion.  *Id.* at 30.  When Troha sought to have the interview admitted at trial, it was for impeachment purposes, and there was no further discussion of nonhearsay or the admission of the interview as substantive evidence.  *Id.* at 160-63.  Moreover, it does not appear the trial court ruled on whether the interview was admissible as substantive evidence, because it found the interview was not a prior inconsistent statement.

It is not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Sweitzer*, 177 A.3d 253, 260-61 (Pa. Super. 2017) (citations omitted).

Our review of the record discloses the following exchange between the Deputy Attorney General ("DAG") and the Victim during trial:

[DAG]: What else would you do with [Troha]?

[Victim]: Like this -- a couple times there were these tails things, and he would tell me to put it like up his butt.

[DAG]: Can you tell us a little bit more about these tails? What did they look like to you?

[Victim]: There was one that was like a devil tail. There was like this pig tail one and there was some that were like leopard tails.

* * *

[DAG]: You said he asked you to put these tails in his butt?

[Victim]: Yes.

[DAG]: How many times would he ask you to do that?

[Victim]: Probably around 50.

[DAG]: Would you do that for him?

> [Victim]:          Yes.

N.T., 10/29/19, at 111-13. During cross-examination, Troha questioned the Victim about her 2018 interview with the former Elk County District Attorney, and Troha's counsel, Andrew Shubin, Esquire ("Attorney Shubin"). The following exchange then occurred:

> [Attorney Shubin]: And do you remember when we talked about whether you put anything into his butt?
>
> [DAG]:          Objection. May we approach?
>
> Court:          Certainly.

*Id.* at 159-60. At sidebar, Attorney Shubin argued that the Victim's statement in the 2018 interview is admissible as a prior inconsistent statement, which could be used to impeach the Victim's trial testimony. In support, Attorney Shubin proffered the following summary of the 2018 interview:

> Well, I can just read to you what the conversation -- So -- I said, So there's a -- like dress-up kind of thing.
>
> And she said, Yes.
>
> And then I said, Go ahead.
>
> And she said -- she started narrating, And then he would put -- he would put it in his butt.
>
> The tail?
>
> Yeah
>
> So he would put the tail in his butt?
>
> Yeah.
>
> While you were there?

Yeah.

And there's another mention of it, Judge.  The other mention is that she never touched his butt.[5]

N.T., 10/29/19, at 160-61 (footnote added).  Thereafter, the trial court sustained the Commonwealth's objection, because the Victim had not been asked, during the interview, whether she had placed any tails into Troha's rectum; thus, the trial court concluded that the interview did not constitute a prior inconsistent statement.  *Id.* at 163.

In its Opinion, the trial court addressed its ruling on the admissibility of the 2018 interview, as a prior inconsistent statement, as follows:

> During the cross examination of [Victim], the matter was introduced during the testimony.  Over the following four pages [of the trial transcript,] the parties disputed the exact phrasing of the Prior Inconsistent Statement by [Victim].  At no time was [Troha] able to satisfy the [c]ourt that there was a foundation to introduce the Prior Inconsistent Statement, as there was no parallel question directed at [Victim] during that earlier interview.  No parallel question was ever produced for the [c]ourt.
>
> * * *
>
> In the end, [Troha] wanted the [j]ury to be able to "infer" what the answer by the witness would have been at the prior [interview], based upon "other" statements which suggested it was true.  The Commonwealth successfully argued that[,] without the matter being directly asked at the prior time, it could not be implied or inferred.  The Commonwealth objection was sustained, as there was no parallel, prior statement to use on cross-examination.

---

[5] Although Attorney Shubin also avers that the Victim said that "she never touched his butt," we note that this portion of the 2018 interview was not read into the transcript.

Trial Court Opinion, 12/15/20, at 2 (unnumbered) (citations omitted).

The portion of the 2018 interview, read at sidebar, included no statement by the Victim as to whether Troha had asked the Victim to insert the tails into his rectum, or whether the Victim had inserted any tails into his rectum.[6] Indeed, the proffered statement from the 2018 interview, *i.e.*, that Troha had inserted a tail into his rectum on at least one occasion is not inconsistent with the Victim's trial testimony that she also had inserted the tails into his rectum. **See** N.T., 10/29/19, at 113. As a result, Troha is due no relief on his first claim of error.

In his second issue, Troha argues that the trial court erred by not allowing testimony from the Victim's paternal grandmother ("K.M.") regarding Mother's reputation for truthfulness. Brief for Appellant at 23. As set forth *supra*, our standard of review is abuse of discretion. See **Commonwealth v. Sweitzer**, 177 A.3d at 260-61.

Troha argues that a witness's character for truthfulness or untruthfulness "may be attacked by testimony regarding the witness's current reputation in the community for truthfulness or untruthfulness." **Id.** at 23

---

[6] As noted *supra*, however, the certified record does not contain a copy of the audio recording of the interview, nor does it include a transcript of it. As such, we may consider **only** the portion of the interview that was read into the record. **See Commonwealth v. Holley**, 945 A.2d 241, 246 (Pa. Super. 2008) (stating that for "purposes of appellate review, what is not of record does not exist.").

(citing *Ohlbaum on the Pennsylvania rules of Evidence*, § 608.05 (2020)). Troha argues that a witness may be impeached with evidence of that witness's bad reputation for truth and veracity. *Id.* at 23-24. Rule 608(a) provides that evidence of reputation for truthfulness is only proper where the witness's character for truthfulness has been attacked. Pa.R.E. 608(a). Pa.R.E. 608(a) states in relevant part as follows:

> **(a)** **Reputation Evidence.** A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness. **But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.** Opinion testimony about the witness's character for truthfulness or untruthfulness is not admissible.

Pa.R.E. 608(a) (emphasis added). Indeed, "[e]vidence of a witness's character for truthfulness or honesty is not admissible to bolster the witness's credibility unless the witness's truthfulness and honesty have first been attacked." *Commonwealth v. Schwenk*, 777 A.2d 1149, 1156 (Pa. Super. 2001).

Initially, our review discloses that Troha's present argument differs from his proffer to the trial court. Specifically, at trial, Troha repeatedly stated that that he was seeking to have K.M. testify as to Mother's "character for

**truthfulness**."[7]   N.T., 10/30/19, at 61 (emphasis added).   The following

discussion occurred at sidebar:

> Attorney Shubin: I would like to offer [K.M.] as a reputation witness as to [Mother's] character for **truthfulness**.   Pursuant to Rule 608(a), reputation may be attacked or supported by testimony about the witnesses' reputation for having a character for truthfulness or untruthfulness, but evidence of truthful character is admissible only after a witness' character for truthfulness has been attacked. That's 608(a).

> The Court: Okay.   And who has attacked [Mother's] reputation for truthfulness?

> Attorney Shubin: I – well, I have.

> The Court: So you're saying you can attack it and then you can call character witnesses?

> Attorney Shubin: I believe that -- I believe that is the case, Your Honor.   I believe a witness is subject under 608(a) for their character for **truthfulness**.

> The Court: Commonwealth?

> [DAG]: I think he's confusing the rule.  I think that we would be allowed to bring in somebody to show that a witness has a reputation for being truthful

---

[7] In his brief, Troha acknowledged his error regarding the proffer of K.M.'s testimony as follows:

> While it is obvious from the context – asking K.M. who herself said she couldn't believe [Mother] – that Troha sought character evidence that the community did not believe that [Mother] had a reputation for being truthful, the record is unclear, conflicting, as to how the court processed this offer of proof.

Brief for Appellant at 15, n.5.

> if he were to attack it or if we were to attack one of his witnesses. It's not necessarily -- when he's already cross-examined [Mother], I just think the use of this as that of what he's trying to do is improper at this point.

N.T., 10/30/19, at 61-62. The trial court sustained the Commonwealth's objection. *Id.* at 62.

Our review of the record reveals that Troha's present argument, *i.e.*, that he had sought to present evidence of Mother's reputation for **un**truthfulness in the community, does not conform with the proffer he made at trial, wherein Troha repeatedly stated that K.M. would testify as to Mother's character for **truthfulness**, as set forth above. Thus, Troha's present claim is not preserved for our review. *See* Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal); *Commonwealth v. Thur*, 906 A.2d 552, 566 (Pa. Super. 2006) (finding that any argument not made before the trial court is waived for purposes of appellate review).

The record reflects that at trial, Troha sought to have evidence of Mother's **truthfulness** admitted, after he had attacked her credibility. Given our deferential abuse of discretion standard, and the argument advanced by Troha before the trial court, we are constrained to find no error on the part of the trial court in sustaining the Commonwealth's objection.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/9/2021</u>